IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS CATENACCI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case Number: 21-cv-02852 |
| v. ) | |
| ) | |
| LORI LIGHTFOOT, in Her Official Capacity ) | |
| As Mayor of the City of Chicago, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>OPPOSED MOTION FOR PRELIMINARY INJUNCTION</u>**

**I.     <u>Introduction</u>.**

    Chicago Mayor Lori Lightfoot is only granting interviews to "journalists of color" to mark the two-year anniversary of her inauguration. Plaintiff Thomas Catenacci, a White journalist for the Daily Caller News Foundation, requested an interview of Mayor Lightfoot on her two-year anniversary. To date, almost two weeks after Plaintiffs' request and despite two follow-up emails, Mayor Lightfoot has not agreed to an interview with Catenacci, apparently due to the mayor's "journalists of color" only interview policy. The mayor's refusal to be interviewed by Catenacci violates Plaintiffs' First Amendment rights and Catenacci's right to equal protection. Plaintiffs move for a preliminary injunction to prevent further, irreparable harm.

## II.     Factual Background.[1]

### A.     Mayor Lightfoot's Discriminatory Interview Policy.

On May 18, 2021, a Chicago reporter tweeted that Mayor Lightfoot's spokeswoman informed her that the mayor "is granting 1 on 1 interviews – only to Black or Brown journalists." Declaration of Michael Bekesha ("Bekesha Decl.") at Ex. A.  On May 19, 2021, Mayor Lightfoot publicly released a letter, stating "By now, you have heard the news that on the occasion of the two-year anniversary of my inauguration as Mayor of this great City, I will be exclusively providing one-on-one interviews with journalists of color."  Bekesha Decl., Ex. B. Mayor Lightfoot's two-year anniversary was May 20, 2021.

Since the announcement, Mayor Lightfoot has granted at least one interview request from a self-identified Latino reporter.  Bekesha Decl., Ex. C.  She has denied or failed to respond to interview requests from White reporters. *Id*.  The announcement drew fierce scrutiny among the city's press corps and beyond. *Id*.  Gregory Pratt, a city politics reporter for the Chicago Tribune and the son of an immigrant from Mexico "requested the mayor reconsider and grant interviews to all beat reporters and said when her spokesperson declined, Pratt canceled his own interview." Bekesha Decl., Ex. D.  Charles Whitaker, dean at the Medill School of Journalism at Northwestern University, told the Chicago Tribune, "We would never, ever in a million years allow that of a white politician.  [I]t's dangerous now to say we are going to allow that of a Black

---

[1]     As Plaintiffs have not yet had the opportunity to conduct discovery, they ask the Court to consider Mayor Lightfoot's and her staff's public statements and published reports about the "journalists of color" only interview policy. *See City of Evanston v. N. Ill. Gas Co.*, 381 F. Supp. 3d 941, 948-949 (N.D. Ill. 2019) ("[E]videntiary rules are relaxed at the preliminary injunction stage, and the Court has substantial discretion to hear and receive evidence intended to preserve the relative positions of the parties until a trial on the merits can be held, whether or not that evidence complies with formal rules and procedures.") (internal citations omitted).

2

politician simply to make a point about the historic inequities in media." Bekesha Decl., Ex. E. The National Association of Hispanic Journalists declared, "NAHJ does not condone restricting press access based on a journalist's race/ethnicity. Any action that threatens the cornerstone of our democracy and First Amendment rights is unacceptable." Bekesha Decl., Ex. F.

    **B.**  **<u>Plaintiffs' Request for an Interview Is Denied</u>.**

  Thomas Catenacci is White. Declaration of Thomas Catenacci at ¶ 3. He also is a national reporter for the DCNF, which is a 501(c)(3) non-profit organization providing original investigative reporting from a team of professional reporters that operates for the public benefit. *Id*. at ¶¶ 4-5. DCNF's website reaches approximately three million unique monthly visitors and its content, which is available without charge to any eligible news publisher, is published by The Daily Caller, Yahoo News, Business Insider and a growing host of other media outlets, reaching a combined audience estimated in excess of 30 million readers. *Id*. at ¶ 5.

  Like most news organizations, DNCF has regularly covered issues related to the pandemic, including how major cities across the country handled the pandemic as well as the pandemic's impact on those cities' economies. *Id*. at ¶6. As DCNF's reporter assigned to cover labor issues, the U.S. economy, and American politics, Catenacci has published dozens of articles on those specific issues. *Id*. at ¶¶ 4 and 7. To do so, he requests interviews, statements, and answers to written questions from government officials and their offices. *Id*. at ¶ 8.

  On May 20, 2021, Catenacci requested, by email, a one-on-one interview with Mayor Lightfoot. *Id*. at ¶9. Specifically, Catenacci seeks to interview Mayor Lightfoot about how her administration plans to encourage more residents to receive the coronavirus vaccine, considering that less than 50% of the city's residents have been administered a single dose; why she believes Chicago is behind other major cities in their vaccination efforts; how her administration has

3

handled the pandemic compared to other major U.S. cities; and how she plans to encourage residents to eat and shop locally as Chicago's vaccinated population grows. *Id*. Catenacci's email contained a link to his Twitter account, which includes a picture of him. *Id*. at ¶ 10. Catenacci sent a follow-up email on May 21, 2021. *Id*. at ¶ 11. He also sent a third email on May 24, 2021. *Id*.

As of the filing of this motion, almost two weeks after his initial request, Mayor Lightfoot's office still has not responded to Catenacci's request nor has Mayor Lightfoot agreed to or sat for an interview with Catenacci. *Id*. at ¶ 12. By failing to respond in a timely manner, Mayor Lightfoot has denied Catenacci's request. This denial is pursuant to Mayor Lightfoot's announcement that she will only grant interview requests from "journalists of color."

### III. **Legal Standard**.

The legal standard for granting a preliminary injunction is well established. As the Seventh Circuit recently reaffirmed:

> To obtain a preliminary injunction, a plaintiff must show a reasonable likelihood of success on the merits, the absence of an adequate remedy at law, and a threat of irreparable harm without the injunction. If the plaintiff makes this showing, the court weighs two additional factors: the balance of harms – harm to the plaintiff if the injunction is erroneously denied versus harm to the defendant if the injunction is erroneously granted – and the effect of the injunction on the public interest.

*Planned Parenthood of Ind & Ky., Inc. v. Adams*, 937 F.3d 973, 980 (7th Cir. 2019).

### IV. **Argument**.

A preliminary injunction is necessary to prevent Mayor Lightfoot from continuing to violate Plaintiffs' First Amendment rights as well as Catenacci's right to equal protection. With respect to a preliminary injunction to prevent a potential First Amendment violation, the Seventh Circuit has held, "[T]he likelihood of success on the merits will often be the determinative factor" because "[t]he loss of First Amendment freedoms, for even minimal periods of time,

4

unquestionably constitutes irreparable injury and money damages are therefore inadequate." *Joelner v. Village of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004) (internal quotations and citations omitted). Although the Seventh Circuit has not directly ruled on whether the same analysis applies to potential equal protection violations, courts within the circuit have. *See e.g., Exodus Refugee Immigration, Inc. v. Pence*, 165 F. Supp. 3d 718, 738 (S.D. Ind. 2016) ("Several judges in this district, including the undersigned, have concluded that this presumption also applies to equal protection violations." (collecting cases)). Plaintiffs focus their argument on the likelihood of success.

      **A.**     **Plaintiffs Will Likely Succeed on the Merits.**

On a motion for a preliminary injunction, Plaintiffs "need only demonstrate that [they] have] a 'better than negligible' chance of succeeding on the merits so that preliminary relief is justified." *City of Evanston v. N. Ill. Gas Co.*, 381 F. Supp. 3d 941, 952 (N.D. Ill. 2019) (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001)). Plaintiffs easily satisfy this standard.

      **1.**     **Mayor Lightfoot Is Violating Catenacci's Right to Equal Protection.**

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment," which prohibits a state from depriving persons within its jurisdiction of equal protection of the laws, "is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "A plaintiff asserting an equal protection violation must establish that a state actor has treated him differently from persons of a different race and that the state actor did so purposefully." *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 812 (7th Cir. 2001).

Mayor Lightfoot is treating persons differently based on their race. In her May 19, 2021, letter, she wrote, "I will be exclusively providing one-on-one interviews with journalists of color." *See* Exhibit B to Bekesha Decl. When Catenacci submitted his interview request (on Mayor Lightfoot's two-year anniversary), Mayor Lightfoot's policy of only granting interviews to "journalists of color" was in effect. Catenacci is not a "journalist of color." He requested an interview with Mayor Lightfoot on the anniversary of her taking office to ask about how her administration plans to encourage more residents to receive the coronavirus vaccine, considering that less than 50% of the city's residents have been administered a single dose; why she believes Chicago is behind other major cities in their vaccination efforts; how her administration has handled the pandemic compared to other major U.S. cities; and how she plans to encourage residents to eat and shop locally as Chicago's vaccinated population grows. When her office did not respond to his request, he followed up twice but with the same result. The failure to provide a timely response is no different than a denial, especially in light of the "journalists of color" only interview policy. Catenacci is being denied an interview of Mayor Lightfoot because of his race.

The government may discriminate based on race in some circumstances. *Billings*, 259 F.3d at 815. This is not one of those circumstances. In the rare instances in which racial discrimination is allowed, the government must demonstrate that the race-based classification promotes a compelling government interest and that the race-based classification is narrowly tailored to serve a compelling state interest. *Id*. Mayor Lightfoot has not identified any judicially recognized compelling interests for discriminating against journalists who are not "of color." Nor has she demonstrated that denying interviews to journalists who are not "of color" is

6

narrowly tailored to serve those unidentified interests. Catenacci therefore has an excellent chance of succeeding on his equal protection claim.

### 2. Mayor Lightfoot is Violating Plaintiffs' First Amendment Rights.

Just a few weeks ago, the Seventh Circuit reiterated, "The importance of a free press to our founders was memorialized in the First Amendment which prohibits the government from abridging the freedom of press." *John K. Maciver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 605 (7th Cir. 2021). It also reaffirmed:

> [T]he importance that this court and the Supreme Court have placed on newsgathering and its fundamental role in allowing citizens "to see, examine, and be informed of their government," not just for its own sake but so as to enable citizens to form their own judgments on matters of public concern and choose qualified representatives. "The press serves and was designed to serve as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve."

*John K. Maciver Inst.*, 994 F.3d at 614-615 (internal citations omitted).[2]

Because of the well-recognized importance of the press and newsgathering, courts must "look carefully at any claim that a government entity is disallowing access to the media or a particular subset thereof." *John K. Maciver Inst.*, 994 F.3d at 615. In *John K. Maciver Inst.*, the plaintiff sought "to attend a limited-access press conference – an event that is not open to the public and not held on government property dedicated to open communication." *Id*. at 610. In deciding that case, the Court determined that the plaintiff sought access to a nonpublic forum.

---

[2] Maylor Lightfoot expressed similar sentiments in her May 19, 2021 letter. She wrote, "The press corps is the filter through which much of what we do in government is dissected and explained to the public. It is essential for a healthy democratic society and an accountable government." Bekesha Decl., Ex. B.

*Id*. Without conceding the nonpublic forum analysis applies here, Mayor Lightfoot cannot satisfy even the nonpublic forum test.

A government official may limit "access to a nonpublic forum … based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Id*. (*quoting Cornelius v. NAACP*, 473 U.S. 788, 806 (1985)). In *John K. Maciver Inst.*, the government official limited access to press conferences based on five factors. 994 F.3d at 606. The first three factors were "reasonably related" to the "goal of increasing the journalistic impact of the Governor's messages by including media that focus primarily on news dissemination, have some longevity in the business, and possess the ability to craft newsworthy stories." *Id*. The fourth and fifth were "reasonably related" to the "goal of increasing journalistic integrity by favoring media that avoid real or perceived conflicts of interest or entanglement with special interest groups, or those that engage in advocacy or lobbying." *Id*. at 610. In other words, the criteria used were related to the purpose served by the forum, namely newsgathering.

Mayor Lightfoot's policy to only grant interview requests from "journalists of color" is not reasonable. The policy does not further the journalistic impact of the mayor's message or increase journalistic integrity as in *John K. Maciver Inst.* 994 F.3d at 606. The only criterion is race, and there is no reasonably related reason for why only journalists of certain races should be allowed to interview Mayor Lightfoot. Plaintiffs do not dispute that Mayor Lightfoot may deny interview requests, including theirs. However, those denials must be "reasonable." *John K. Maciver Inst.*, 994 F.3d at 610.

In essence, Mayor Lightfoot's position is that a government official may exclude persons of certain races from nonpublic forums without running afoul of the First Amendment.³ Plaintiffs have found no case in which a court has authorized a government official to deny access to a nonpublic forum on such a basis. Plaintiffs also cannot envision a circumstance in which such limitation would not run afoul of the Equal Protection Clause. In other words, because Mayor Lightfoot is violating Catenacci's right to equal protection, she is also violating Plaintiffs' First Amendment rights. Plaintiffs have a "better than negligible" chance of succeeding on their First Amendment claim.

    **B.    Plaintiffs Are Suffering Irreparable Harm, and Thus There Is No Adequate Remedy at Law.**

Whether an adequate remedy at law exists often is considered together with whether there is irreparable harm. *Libertarian Party v. Packard*, 741 F.2d 981, 984 (7th Cir. 1984). Irreparable harm exists when the harm "cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). And as noted above, the Supreme Court has held, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The harm suffered by Plaintiffs will not be prevented or fully rectified by a final judgment. In addition to the fact that Plaintiffs' First Amendment rights and Catenacci's right of

---

3    If this were the case, Mayor Lightfoot could prevent American Indians from exercising their First Amendment rights in terminals at Midway Airport (*International Soc. for Krishna Consciousness v. Lee*, 505 U.S. 672 (1992)), Black voters from exercising their First Amendment rights from City polling places (*Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1886 (2018)), Latino residents from placing signs on City utility poles (*City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984)), and Asian candidates from participating in political debates on the Chicago Access Network Television (*Arkansas Educational Television Commission v. Forbes*, 523 U.S. 666 (1998)).

9

equal protection are being violated, Plaintiffs are investigating and intend to publish an article about how major cities are encouraging residents to receive the coronavirus vaccine and whether they are being successful at doing so; how major cities are handling the pandemic, especially as there is (or was) a push to reopen the country in time to celebrate the Memorial Day and July 4th holidays; and how major cities are seeking to boost their local economies, including if they plan to encourage residents to eat and shop locally as the vaccinated population grows.  If Plaintiffs do not have the opportunity to ask Mayor Lightfoot about these issues until after a final judgment, such questions will be obsolete.  A preliminary injunction is necessary to prevent any further harm.

        **C.**       **The Balance of Harms Favors a Preliminary Injunction.**

Although the case law makes clear that "[t]he higher the likelihood of success on the merits, the less decisively the balance of harms needs to tilt in" Plaintiffs' favor (*Planned Parenthood of Ind & Ky., Inc. v. Adams*, 937 F.3d 973, 980 (7th Cir. 2019), the balance of harms here overwhelmingly favors a preliminary injunction.  Where the irreparable harm to Plaintiffs is clear, "there can be no irreparable harm to a municipality when it is prevented from" taking unconstitutional action.  *Joelner v. Village of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004).  If the Court determines that Plaintiffs are likely to succeed on the merits, there is little, if any, harm to Mayor Lightfoot by preliminarily enjoining her from violating Plaintiffs' First Amendment rights and Catenacci's right to equal protection.

        **D.**       **A Preliminary Injunction Serves the Public Interest.**

The Fourth Circuit has pointedly declared, "Surely, upholding constitutional rights serves the public interest."  *Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003); *Joelner*, 378 F.3d at 620 (7th Cir. 2004).  Like the irreparable harm factor, if the Court

determines that Plaintiffs are likely to succeed on the merits, there is no identifiable public interest in allowing Mayor Lightfoot to violate Plaintiffs' First Amendment rights and Catenacci's right to equal protection. A preliminary injunction is warranted.

**V.     Conclusion.**

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily enjoin Mayor Lightfoot from continuing to deny Plaintiffs' interview request on the basis of Plaintiff Catenacci's race.

Dated:  June 2, 2021                                          Respectfully submitted,

/s/ Paul J. Orfanedes
Paul J. Orfanedes
(Ill. Bar No. 6205255)
Michael Bekesha
(*Pro Hac Vice* motion pending)
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC  20024
Tel: (202) 646-5172
Fax: (202) 646-5199

/s/ Christine Svenson
Christine Svenson
(Ill. Bar No. 6230370)
SVENSON LAW OFFICES
505 N. LaSalle Street, Suite 350
Chicago, IL 60654
Tel: (312) 467-2900

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on this 2nd day of June 2021, I served Plaintiffs' Memorandum of Law in Support of their Opposed Motion for Preliminary Injunction by hand delivery on:

>Office of the City Clerk
>City of Chicago
>121 North LaSalle Street, Room 107
>Chicago, IL 60602

I certify that on this 2nd day of June 2021, I also served by electronic mail Plaintiffs' Memorandum of Law in Support of their Opposed Motion for Preliminary Injunction on:

>Andrew Worseck
>Chief Assistant Corporation Counsel
>City of Chicago Department of Law
>121 North LaSalle Street, Suite 600
>Chicago, IL 60602
>Andrew.Worseck@cityofchicago.org

>/s/ Michael Bekesha
>Michael Bekesha