IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS CATENACCI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case Number: 21-cv-02852 |
| v. ) | |
| ) | |
| LORI LIGHTFOOT, in Her Official Capacity ) | |
| As Mayor of the City of Chicago, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
OPPOSED MOTION FOR LIMITED JURISDICTIONAL DISCOVERY
AND TO DEFER BRIEFING OF DEFENDANT'S MOTION TO DISMISS**

1. Plaintiffs request an opportunity to conduct limited jurisdictional discovery into the scope and duration of Mayor Lightfoot's race-based interview criteria because the mayor's explanation of her discriminatory interview policy is ever-changing and the motion to dismiss relies exclusively on the declaration of an interested witness.

2. "[I]t is within the discretion of the district court to allow a plaintiff to conduct limited discovery in order to establish that jurisdiction exists." *Sanderson v. Spectrum Labs, Inc.*, 2000 U.S. App. LEXIS 34058, *10 (7th Cir. Dec. 29, 2000). In addition, "[a] party requesting limited discovery does not have a high burden to meet. It is widely accepted that discovery should be freely permitted in civil litigation." *New Berry v. Smith*, 2021 U.S. Dist. LEXIS 22261, *5 (N.D. Ind. Feb. 5, 2021). "Courts generally will grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Gilman Opco LLC v. Lanman Oil Co.*, 2014 U.S. Dist. LEXIS 41548, **21-22 (N.D. Ill. Mar. 28, 2014).

3. In addition, jurisdictional discovery is of a greater necessity when a defendant makes a factual challenge while relying on a declaration by an interested witness. *Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999). In *Sapperstein*, an employee sued his employer for not paying him overtime in violation of the Fair Labor Standards Act. *Id*. at 854-855. The employer moved to dismiss for lack of subject matter jurisdiction, alleging that its annual gross volume of sales was less than the jurisdictional amount of $500,000. *Id*. at 855. In support of its motion, the employer submitted an affidavit by its manager, stating that the gross annual sales were $497,253.00. *Id*. Based on the affidavit, the district court dismissed the case. *Id*. The Seventh Circuit reversed. *Id*. The Court held:

> [T]he district court abused its discretion. It was not reasonable, in the context of a motion to dismiss, to credit an affidavit from the defendants' manager as to the amount of gross sales when the plaintiff had no real opportunity to contest the allegation. An employee of the defendants is not a disinterested witness. She is subject to their influence, in a sense in their power; and it is not easy to make a credibility determination from the face of an affidavit. Moreover, the roughly $2,500 by which [the manager's] affidavit states [the employer] falls short of the required amount is close enough to be within the range of accounting error if not to raise other doubts. [The Plaintiff] had no opportunity to conduct discovery to challenge the credibility of the affidavit. Given its source and content, in the circumstances the affidavit was not by itself credible, and the trial court erred in relying upon it without further inquiry.

*Id*. at 856.

4. In her motion to dismiss, Mayor Lightfoot once again admits that she discriminated against journalists on the basis of race on May 19, 2021 and May 20, 2021. Mayor Lightfoot also confirms that Catenacci's interview request was received by her office on May 20, 2021. She also does not deny that Catenacci is not a "journalist of color." Nor does she deny that she never granted or responded to Catenacci's interview request.

5. Nonetheless, based on a still-developing explanation of the mayor's race-based interview criteria, Mayor Lightfoot asserts that Plaintiffs lack standing because Catenacci's

interview request purportedly did not fall within the scope and duration of her discriminatory interview policy.

6. The mayor's motion is obviously a factual challenge to standing. Its entire argument relies on a declaration by her communications director. However, other evidence previously submitted to the Court by the mayor or statements made by her or her representatives raise doubts about, if not refute, the declaration.

7. First, it was not until the mayor was required to defend her discriminatory interview policy in court that Plaintiffs or the public learned about the purported "Press Tour." Mayor Lightfoot's communications director now asserts that the mayor's race-based interview criteria were limited to a purported "Press Tour." Second Declaration of Kathleen Lefurgy ("Second Lefurgy Decl.") at ¶¶ 5-6; Declaration of Katleen Lefurgy ("First Lefurgy Decl."), attached as Exhibit B to Defendant's Status Report (ECF No. 16) at ¶¶ 5-6. However, the Mayor did not identify this newly alleged limitation in her May 19, 2021 letter announcing her policy that "on the occasion of the two-year anniversary of my inauguration as Mayor of this great City, I will be exclusively providing one-on-one interviews with journalists of color." Exhibit A to Lefurgy Second Decl. The mayor also did not identify the existence of the purported "Press Tour" or the limited duration of her race-based interview criteria in her tweets or statements about the policy on May 19, 2021 and 20, 2001. *See* https://twitter.com/chicagosmayor/status/1395019809742487558 ("This is exactly why I'm being intentional about prioritizing media requests from POC reporters on the occasion of the two-year anniversary of my inauguration as mayor of this great city."); *See also* https://www.facebook.com/watch/live/?v=896208950976846. Nor did the mayor's attorneys mention the alleged durational limitation during their two telephone calls with or in their June 4, 2021 letter to Plaintiff's counsel. Exhibit

3

A to Defendant's Status Report (ECF No. 16).  The mayor's attorneys also did not mention the purported "Press Tour" during the June 7, 2021 hearing.  In addition, Mayor Lightfoot made no mention of the purported "Press Tour" during a June 12, 2021 interview with CNN or a July 26, 2021 interview with the New York Times.  *See* https://twitter.com/NewDay/status/1403340392175706115 and https://www.nytimes.com/2021/07/26/opinion/sway-kara-fisher-lori-lightfoot.html.  In fact, the only instances in which the purported "Press Tour" were mentioned are the two declarations submitted by the mayor's communications director to this court.

8. Second, it was not until the mayor moved to dismiss the lawsuit that Plaintiffs and the public learned that the purported "Press Tour" took place during limited hours.  Mayor Lightfoot's communications director asserts in her second declaration that the purported "Press Tour" took place from 9:30 a.m. on May 19, 2021 to 9:25 a.m. on May 20, 2021.  Second Lefurgy Decl. ¶ 8.  However, the specific times of the purported "Press Tour" were not previously mentioned by the mayor, her attorneys, or even her communications director in her first declaration submitted to this court.  *See* First Lefurgy Decl.

9. Third, it was only within the course of this litigation that Plaintiffs and the public learned that the race-based interview policy only applied to interviews on a specific topic.  The mayor's communications director asserts that the race-based interview criteria only applied to interviews about "Mayor Lightfoot's two-year anniversary as Mayor of Chicago."  Second Lefurgy Decl. at ¶¶ 5, 7; First Lefurgy Decl. at ¶¶ 5, 7.  Again, at no time prior to the mayor's need to respond to this lawsuit in Court did the mayor or her representatives make any mention of this limited scope.

10. Fourth, whether the race-based interview criteria will be used in the future is unclear.  Although the mayor's communications director asserts that "there are no plans to use

4

[the race-based interview criteria] in the future[,]" Mayor Lightfoot told the New York Times on July 26, 2021 that she "would absolutely do it again. I would absolutely do it again. I'm unapologetic about it." *See* Second Lefugy Decl. at ¶ 16 and https://www.nytimes.com/2021/07/26/opinion/sway-kara-fisher-lori-lightfoot.html.

11. Finally and importantly, like the manager in *Sapperstein*, Mayor Lightfoot's communications director is not a disinterested witness. 188 F.3d at 856. In addition, the fact that only now does the mayor identify the purported "Press Tour," let alone the specific times and topics of the purported "Press Tour," raises other doubts. *Id*. It is therefore reasonable – if not necessary – for Plaintiffs to have the opportunity to conduct limited discovery into the scope and duration of the mayor's discriminatory interview policy. *See Teamsters Local Union No. 357 v. Republic Airline, Inc.*, 2015 U.S. Dist. LEXIS 118274, *3 (N.D. Ind. Sept. 4, 2015).

12. Defendant opposes this motion.

\* \* \*

For the foregoing reasons, Plaintiffs respectfully request that the Court grant them the opportunity to conduct limited jurisdictional discovery into the scope and duration of the mayor's discriminatory interview policy and that briefing on Mayor Lightfoot's motion to dismiss be deferred until the completion of such discovery.

| | |
|---|---|
| Dated: August 10, 2021 | Respectfully submitted, |
| /s/ Michael Bekesha | /s/ Christine Svenson |
| Michael Bekesha (Admitted *Pro Hac Vice*) | Christine Svenson (Ill. Bar No. 6230370) |
| JUDICIAL WATCH, INC. | SVENSON LAW OFFICES |
| 425 Third Street, S.W., Suite 800 | 345 N. Eric Drive |
| Washington, DC 20024 | Palatine, IL 60067 |
| Tel: (202) 646-5172 | Tel: (312) 467-2900 |
| | *Counsel for Plaintiff* |