IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS CATENACCI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 21 C 2852 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| LORI LIGHTFOOT, in her official capacity as Mayor of the City of Chicago, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The case is before the Court on plaintiffs' motion to compel Mayor Lightfoot's Rule 30(b)(6) designee to answer questions she refused to answer during her deposition and to compel the Mayor to produce a properly prepared Rule 30(b)(6) designee. For the reasons set forth below, the Court denies the former motion [39] and grants in part and denies in part the latter motion [41].

## Background

On May 19, 2021, Mayor Lightfoot sent a letter the Chicago press corps that states: "[O]n the occasion of the two-year anniversary of my inauguration as Mayor of this great City, I will be exclusively providing one-on-one interviews with journalists of color." (ECF 40-3, Ex. 1.) From 9:30 a.m. on May 19, 2021 to 9:25 a.m. on May 20, 2021, Mayor Lightfoot participated in a press tour that consisted of eight one-on-one interviews about her second anniversary as Mayor. (ECF 40-3, Ex. 2 ¶¶ 3-4, 8.)

On May 20, 2021 at 4:23 p.m., plaintiff Catenacci, who is a white journalist employed by plaintiff Daily Caller News Foundation, emailed a request to have a one-on-one interview with Mayor Lightfoot to address various issues related to the Covid-19 pandemic. (*Id.* ¶ 11; ECF 22 ¶¶ 3, 9.) Plaintiff sent follow up emails on May 21, 2021 and May 24, 2021, but he received no response. (*Id.* ¶¶ 10-11.) Shortly after, Mr. Catenacci filed this suit, alleging that the Mayor had tacitly denied his interview request and had done so because of his race. (*Id.* ¶¶ 11, 20.)

Mayor Lightfoot filed a motion to dismiss, arguing that plaintiffs lack standing to pursue this suit because Mr. Catenacci, who asked to interview the Mayor after the press tour ended and about topics other than the mayoral anniversary, was not injured by the press tour parameters. Plaintiffs requested permission to conduct discovery on the jurisdictional issue. Judge Lee agreed that "some limited jurisdictional discovery [was] appropriate," and allowed plaintiffs to conduct a

Rule 30(b)(6) deposition of the Mayor "limited to the issues raised in defendant's motion to dismiss." (ECF 35 at 12-13.)

Subsequently, plaintiffs issued a 30(b)(6) deposition notice to the Mayor asking her to designate a deponent to testify on three topics:

> 1. The policy to exclusively provide one-on-one interviews with journalists of color as outlined in Defendant's May 19, 2021 letter, including, but not limited to, the development of the policy, the scope of the policy, the duration of the policy, the implementation of the policy, and the communication of the policy to staff, journalists, and the public;
> 2. The "Press Tour" as identified by the declarations of Kathleen LeFurgy, including, but not limited to, the development of the "Press Tour," the scope of the "Press Tour," the duration of the "Press Tour," the implementation of the "Press Tour," and the communication of the "Press Tour" to staff, journalists, and the public; and
> 3. Whether Defendant's policy to exclusively provide one-on-one interviews with journalists of color as outlined in her May 19, 2021 letter will be used in the future.

(ECF 42-1.) Before the deposition, the Mayor objected to the first two topics "to the extent [they] seek[] testimony regarding 'the development'" of the alleged policy or press tour. (ECF 42-2.) The deposition proceeded, and these motions followed.

**Plaintiffs' Motion to Compel Answers to Deposition Questions**

During the deposition, Rule 30(b)(6) designee, Kathleen LeFurgy, refused to answer the following questions on the grounds that they were related to the development of the contested press tour and its parameters:

- When was the May 19, 2021 letter written?
- Who wrote the letter?
- What was the purpose of the letter?
- When was the meeting during which the Mayor and the Mayor's communications team agreed to the alleged policy?
- Did the Mayor provide you with any guidance on how to implement the alleged policy?
- During the meeting did the Mayor agree to limit application of the alleged policy to a two-day period?
- Was the May 19, 2021 letter written before or after the meeting?
- When was it decided that the set of one-on-one interviews the Mayor would have on May 19, 2021 and May 20, 2021 would be described as a press tour?
- Was the decision to describe that set of interviews as a press tour made before the May 19, 2021 letter was written?
- When did the Mayor's Office first start referring to this set of interviews as a press tour?
- When was it decided that this press tour would only be a twenty-four-hour period?

- Did you discuss with the Mayor the scope, duration, implementation, timing, and subject matter of the alleged policy or how it would be communicated to staff, journalists, and the public?

(*See* ECF 40-3 at 9-11, 21-24, 37, 43, 49, 51, 82-83, 86-87.)

Plaintiffs argue that the answers to these questions would shed light on the Mayor's "intentions with respect to the implementation and duration" of the press tour parameters, which "are essential to Plaintiffs' opposition to the pending motion to dismiss." (ECF 40 at 6.) But the issue here is not what the Mayor intended or how and why the press tour parameters were developed, but whether plaintiffs were harmed by them. The Mayor's answers to the above listed questions would have no bearing on that issue. Thus, the Court denies plaintiffs' motion to compel answers to deposition questions.

**Plaintiffs' Motion to Compel Production of a Properly Prepared Rule 30(b)(6) Witness**

Plaintiffs argue that Ms. LeFurgy was not prepared to answer questions within the scope of topic one of the 30(b)(6) notice. Specifically, they say Ms. LeFurgy was "ill prepared" to answer questions about "the mayor's understanding and intentions regarding the policy and its implementation" and "how [it] was described and communicated" to the public and press. (ECF 42 at 7.) For the reasons discussed above, these questions are beyond the scope of the 30(b)(6) deposition. So are questions about the rationale for positions taken by the Mayor's lawyers in this litigation and whether the Mayor knew that a June 3, 2021 memo from her communications team incorrectly characterized an interview that day as pertaining to her mayoral anniversary. (*Id.* at 8-10; *see* ECF 42-3 at 46-48, 69-70.) Because these questions are outside the scope of the deposition, there was no reason for Ms. LeFurgy to have been prepared to testify about them.

The situation is different, however, for the questions about whether every journalist who had been granted a press tour interview had specifically requested to ask questions about the mayoral anniversary, whether any of those journalists asked questions about the coronavirus pandemic or homicide rates during those interviews, and whether the Mayor's scheduling office had been asked to provide times on days other than May 19, 2021 and May 20, 2021 for the anniversary interviews. (*See* ECF 42-3 at 14, 31-32, 78.) Those questions bear upon the Mayor's claim that plaintiffs' interview request was beyond the scope of the press tour parameters because he wanted to ask questions about the coronavirus pandemic, not her mayoral anniversary, and the interview would occur, if at all, after May 20, 2021. The Mayor's designee should have been, but was not, prepared to answer these questions.

Finally, plaintiffs contend that Ms. LeFurgy should have been prepared to testify as to whether the parameters that were applied to the anniversary press tour will be used in the future. The Court agrees. Though, as the Mayor points out, a 30(b)(6) designee is only required to testify about corporate knowledge, Ms. LeFurgy said she had no knowledge at all about whether the Mayor intended to give interview opportunities solely to journalists of color in the future. (*See id.* at 63 (Ms. LeFurgy saying, "I can't read her mind," in response to counsel's questions about

whether the Mayor intends to provide interview opportunities solely to journalists of color in the future).) Ms. LeFurgy should have been prepared to answer those questions.

## Conclusion

For the reasons set forth above, the Court denies plaintiffs' motion to compel deposition answers [39] and grants in part and denies in part plaintiffs' motion to compel production of a properly prepared 30(b)(6) witness [41]. The Court orders the Mayor to tender for deposition a 30(b)(6) designee who is prepared to testify about whether the press tour journalists had specifically asked to interview the Mayor about her mayoral anniversary, whether any of those journalists asked questions about the coronavirus pandemic or homicide rates during the press tour interviews, whether the Mayor's scheduling office had been asked to provide time on days other than May 19, 2021 and May 20, 2021 for anniversary interviews, and whether the Mayor intends to give interview opportunities solely to journalists of color in the future. The deposition shall be no longer than forty-five minutes and must be completed within two weeks of the date of this Order.

**SO ORDERED.**  **ENTERED: January 24, 2022**

**M. David Weisman**
**United States Magistrate Judge**